Good morning, Your Honor. May it please the Court, my name is James P. Kemp. I represent Jacqueline Nickler, the appellant in this matter. I'd like to reserve two minutes for rebuttal, if I might. At the heart of this case is an issue of First Amendment retaliation. But it has sort of an interesting twist. Ms. Nickler, who is a DA team clerk for Clark County at the District Attorney's Office, said, and this is a quote, No wonder shit like Friday happens. Now, this was taken by the appellees to be a reference to the Sandy Hook shooting in Connecticut, which had taken place about three days prior. Ms. Nickler has always maintained that this was actually something about one of her coworkers who had not completed their tasks, their work tasks on the Friday before, and caused a delay in consternation in preparing the cases on the following Monday morning. So was it in reference? So was that statement in reference to things being screwed up at work, the calendaring system was not working? That is what Ms. Nickler has maintained that she was talking about. But interestingly, the appellees, the defendants in this case, took it to be a reference to the school shooting in Connecticut. It's a little bit surprising to me that they came to that conclusion, because she didn't say anything about Sandy Hook or anything about shooting or anything having to do with it. But they took that to be a reference to that. In some instances, the appellees have said that she made a threat. There's nothing. Objectively, that is not a threat. It's an observation. But apparently, they found it offensive, and so they decided that they were going to suspend Ms. Nickler. Why does it all rise to a First Amendment violation? Well, so — Wasn't this — No. And I understand that. And that's where the interesting twist is in this case, because while she's saying I was talking about a workplace incident, which, you know, might not rise to protected speech on the First Amendment, the appellees considered it to be a statement about an issue of national importance. This was all over the news. It was going on throughout the country. It was being spoken about in the press and by people over water coolers and everywhere. They took it to be an issue of national importance. And when they considered it to be that issue of national importance, and then they take action against her, then it becomes the First Amendment violation. Because even though — I mean, communication is a two-way street. You have the speaker and you have the listener. The speaker in this case didn't intend it to be that way, but the listener took it as being a reference to — an offensive reference to the Sandy Hook shooting and then imposed punishment on her for almost four years. What are her damages? Are the damages humiliation? Did she lose wages or anything like that? And again, we're here on a 12b-6 dismissal. I know, but I just was curious what she would show. The allegations are that she did suffer extreme emotional distress. That's in the complaint. She talks about humiliation and embarrassment being presented. She didn't lose wages at all. Actually, she did because — and that's the next step in the process. Once they take away her badging privilege so that she has to wait, essentially, to go into the building once the marshals are present to do security screenings, she loses the opportunity to work overtime, which was available, which she had gotten before. She had been working for the DA's office for nine years up until this point. But she didn't lose her ordinary wages. She wasn't demoted or anything of that nature. You know, and I'm not completely sure. I think that her suspension might have been with pay. So the period of time, about three weeks, that she was off of work completely, two to three weeks, she wouldn't have — She still works for the DA's office, right? Correct, yes. Yeah. So what's your best case that says that, you know, she's saying, oh, this is just all about work. And you say the listener took it as meaning she was referring to Sandy Hook. So therefore, it's a constitutional protected speech. Yeah. Do you have a case that supports that idea? I haven't found anything similar to this. It really does seem to be something of a unique situation where somebody has taken a statement that someone made. Someone in authority has taken that statement, blown it out of proportion, took it to mean something that it never was intended to mean and objectively doesn't say anything about, and treats that as offensive speech about an issue of national importance and then imposes retaliation based on that. I've not found a case similar to that, Your Honor, I have to admit. I just don't know of one. Do you want to address any of your other claims? Because the district court judge said that you failed to state sufficient allegations that would state a plausible claim under the Ninth Amendment, the Fourth Amendment. Sure. Can I also interject a question if we're moving on on the Monell claims? The defendant, the appellees here, said that the county was not the decision maker. The regional justice center and Mr. Grierson are not Clark County officials. And so your Monell claims against Clark County are erroneous because the decision makers on her badging privileges and the like were not county officials. Is that correct or incorrect? So the — my understanding of the Eighth Judicial District Court is a State ultimately is answerable to the State. It's a statewide district court system. The county employee in this case, Ms. Lampermont, she was — she worked for the DA's office, which is the county. But she was a subordinate to the DA. Was she — is there any evidence in the record that she was a policymaking official? In the record, I'm not sure. I think that that might be something that we could amend to show because she was at a director or assistant director level where she had certainly great influence on policy and how policy was being applied here, you know. That's — that is something we are seeking to amend. We're seeking leave to amend that the court didn't address. That was requested in the opposition to the motion to dismiss. It was never addressed by the court. The court just dismissed it without prejudice but didn't actually say you can go ahead and amend. So one thing I would like to mention about the Fourth Amendment, the search here, the searches that went on after she got her clearance from the psychologist — by the way, their doctor, Dr. Mortallaro, cleared her, said she's completely fine. That was by the end of January 2013. They continued to search her until November of 2016. And the searches become unreasonable. Once she's been cleared by the psychologist and once it's been determined that she can go back to work — Are any other employees searched? Not that — not that I'm aware of. Not that I've been — So they have a blanket administrative search for the general public. The general public, but not for the employees. But for the employees, they have a different system. They have a lane that they go through. They swipe their badge and off they go. They don't get — they don't go through magnetometers. They don't get their bags x-rayed. They don't get wanted. They don't get — And so she's the — she was singled out not to get — to have a different level of search than other employees. Correct. We have government officials that were using an otherwise lawful search mechanism and they were using it as a weapon to intimidate her, to chill her speech, and to punish her for expressions of speech that they felt that she had made. And that renders this search unreasonable under the Fourth Amendment. The fact that they continued on for nearly four years, they continued this. And at least three and a half of those years, they knew that she — a nine-year employee, never had any sort of problems like this before, got cleared by their doctor. You know, they went ahead and said, yeah, we understand. Okay, you can come back to work. This was not a threat. This was not anything of that nature. In fact, there's an email where they recognize this is not a specific threat. But they continued to do this to her, singling her out because of what she said. That makes this an unreasonable search, Your Honor. So I'll reserve my time. Thank you. Do you want to save some time for rebuttal? Yeah. Yes, you have a minute and 18 seconds. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Lawrence Van Dyke on behalf of Appellee Steven Grierson. And with me at counsel's table this morning is Rob Freeman, who is the counsel for the other appellees in the case, including Clark County. We're planning to split argument time. What I'm planning to do is address just the law of the case issue, Your Honor, because I think that that is dispositive in this case. And Mr. Freeman will address the Court on the other issues, including the merits of each claim, qualified immunity, et cetera. As we argue in our brief on page 24, we believe that this appeal can and should be decided on law of the case grounds, Your Honor, from the earlier preliminary injunction appeal. And the ordinary rule in this circuit and other circuits is that you don't give law of the case effect to a decision in an earlier P.I. appeal. But there's an important exception to that rule that's been recognized multiple times in this circuit and has been recognized by all of the other circuits that I'm aware of, Your Honor. And unfortunately, it's not super simple to be able to explain the difference. But in order to do it here, I think, when it should apply and when the exception should apply, I think it's helpful to go through the cases and see why the exception exists, and then we'll see why it should apply here. Now, this Court has emphasized that the reason why you don't normally apply law of the case to preliminary injunction rulings, earlier preliminary injunction rulings are because they're, quote, often made hastily and on less than a full record. That's from this Court's 2013 Center for Biological Diversity case. And the Court has also emphasized that preliminary injunction appeals are often decided on something other than, quote, a pure issue of law. That's from the 2007 Rancher's case. But when you compare this Court's cases where it has applied law of the case to an earlier P.I. appeal and where it hasn't, I think you'll see a very helpful pattern. So I'm going to real quick go through this Court's cases, starting in sort of reverse chronological order. In 2015, this Court decided the Rodriguez v. Robbins case. We cite that on page 24 of our brief. Do you agree that this is not, that the earlier decision was not a pure issue of law? It seemed that they were applying legal principles to the facts of this particular  Well, so I thought about that some, Your Honor. I think, you know, every case has facts, and every case you have to apply at a P.I. stage, you have to apply the law to the facts. And so I think when this Court has talked about, and when this and other courts have talked about something being a pure issue of law, what it's talking about is, as you well know, the P.I. standard, the preliminary injunction standard, has multiple things that the Court can look at. So in theory, if you're deciding it on anything other than whether or not they've made the first, what you'd call the first step, whether or not you can show a reasonable likelihood of success on the merits, if you're deciding it on some other standard, then I don't think you would be addressing a pure issue of law that would be applicable in the later case. But if you are deciding it on that, whether or not they've shown a likelihood of success on the merits, and if the facts haven't changed at all, and I'll show where this Court has talked about that, actually, in the 2003 Humanitarian Law Project case that actually addressed that, where the facts hadn't changed at all. Then, and if the Court's earlier decision is decided on a law applied to facts that haven't changed, and the Court, in its decision, says we're deciding this because they can't make out a claim under the law here, then I think that it is decided as a pure issue of law. And I think that fits here. So are you saying that if a court says there's a likelihood of success on the merits, that's the same as saying the plaintiffs will succeed? And therefore, that's binding on a — on the subsequent panel? I think it could be. Is there a case that — There is a D.C. case that Judge Sintel — Is there a Ninth Circuit case? I'm not sure. We've been very careful about this. Actually, yes, Your Honor, there is. There's a 2015 Rodriguez case and a 2003 Humanitarian Law Project case. Now, both those cases actually were — you know, the Rodriguez case was recently overturned by the U.S. Supreme Court, and the — but on different grounds. Oops. But on different grounds. And if you look at what the cases that the Rodriguez cases cite, all these cases are applying the same standards. So, yes, in multiple cases, this Court has said, when there was a preliminary injunction issued, this Court has later said, you know what, the facts haven't really changed, and the law that we — we applied earlier was a — the decision was driven by the law, and so that's what we're going to cite. And if you look — if you look at the reasons why normally P.I. standards don't get law of the case, it's because, as this Court has said, because they're often hasty. So if you look at — if you look at the Rodriguez case, the Rodriguez case, I think, is very helpful. This Court gave three reasons in the Rodriguez case why it applied law of the case to an earlier preliminary injunction appeal, exactly like you're saying. And one of the reasons was, is because the previous decision was not made hastily. If you look at the — if you look at this case, it was not — Judge Bivey's and Judge Randy Smith's decision in this case was not made hastily at all. Sotomayor, you don't make any decisions hastily. Well, I've — you know, I've asked for preliminary injunctions myself. You're going to go over your time. You want to save your colleague five minutes, right? You're at five minutes right now. Okay. It sounds good, Your Honor. I'll go ahead and sit down. One last thing I'll say, though, and this relates to his, I think the same reasons that this — that law of the place should apply, and if you don't apply law of the case, I think that the same considerations would be a reason why qualified immunity would apply here. Because if a previous panel found that on — that these cases didn't even lack legal merit, then how could it possibly be that these things are clearly established as a matter of law, Your Honor? So I think the same concerns would go either way. Thank you, Your Honor. We'll hear from your colleague. Thank you, Your Honor. Robert Freeman here. May it please the Court, I'm here for Clark County and Kathleen Lambermont, and I have 4 minutes and 54 seconds to address what we consider to be the merits of plaintiffs, Ms. Nickler's constitutional claims. I know counsel described this as a First Amendment retaliation claim at the heart of the case, and as everyone knows and as you point out, that requires the statement be a matter of public concern. Now, the Ninth Circuit sitting in review of the preliminary injunction found that her statement was not a matter of public concern. Whether or not a statement is a matter of public concern, of course, is a question of law, and it's a content-based test. This statement is alleged to have been by Ms. Nickler about the conditions of her workplace. There's case after case after case that demonstrate that that is not sufficient to afford constitutional protection. This is not any different. Well, she says that her supervisors took it as an issue of public concern. I mean, they assumed she was commenting on what happened at Sandy Hook. What is that? Does that have any significance? Well, I mean, the employer is entitled to limit the statements of public employees under circumstances where those statements would impair the functioning of government, where they would impede or create hostile working environments. That's the way they took the statement. As some kind of threat, I think Judge Bybee in the previous hearing used the word postal. That's the way they took it. They put her in a workplace violence program, and they suspended her with pay. She didn't lose any of her regularly scheduled pay. They sent her for a certificate of fitness. She obtained a certificate of fitness. Counsel's brief concentrates a lot of his effort on what happened after the certificate of fitness was obtained. To the extent that's a concern for you today, I'll say the same thing that was said at the preliminary injunction hearing and the same thing that was included in that order. Yes, the certificate of fitness was sufficient to have her come back to work, but it in no way required that the court, the real decision-maker, decide that it was a guarantee that she was not going to go postal again. So is on the Fourth Amendment claim, the plaintiff's view is that having been cleared for return to work, that there wasn't a basis for the heightened search and that there wasn't reasonable suspicion. So she has at least raised a Fourth Amendment claim. Why is that wrong? Well, the Fourth Amendment claim is premised and evaluated under Clarfield and McMorris. But those are for blanket administrative searches that are suspicionless searches for all of the public. Now, she obviously was in a different category because employees were not subject to that administrative search. And then she only is singled out for additional search. Well, I think Judge Bybee decided that maybe that was more in the vein of an equal protection claim. Okay. But now you're talking to a different panel. I understand. I understand. So could you help me understand why more suspicion or some sort of articulable suspicion is not necessary since she wasn't subject to the blanket suspicionless search? The Fourth Amendment requires that the administrative search is reasonable. Well, but this she wasn't subject to the administrative search. That was subject to the public and the employees, the employer had deemed that the employees got a different level of search. She got the same. And then she, then they changed their mind only as to her. So she was obviously singled out as an employee. So I don't see how the administrative search has anything to do with her claim here. She was singled out because of her statement. She was put in a workplace violence program. They decided that that required a stepped up, as you say, level of search. There was nothing that developed after that that relaxed that concern that the court had. And so she was still required to undergo that search. It's not unreasonable. It was reasonable. It's not unreasonable. So her claim is that it wasn't reasonable. Why doesn't that survive 12b-6? I mean, this is an issue that this is something to be determined in trial, right, not at the complaint. We'd have to say as a matter of law, the employer was reasonable, which seems unlikely. Well, I don't think so, Your Honor. Why is that? Well, what I think is is that if you were going to determine that the search was facially unreasonable, facially a violation of the Fourth Amendment, you would have to find that she had some right to enter that building without being searched. Well, she was an employee. She didn't have a constitutional right to enter that building. She was an employee, and all the employees were allowed to enter in a certain way. And then in order to put a heightened scrutiny on her, there had to be a basis. And she claims there isn't a basis. I mean, that certainly seems like a Fourth Amendment claim. Well, I would ---- Winner or loser is a different question. Well, I would disagree for this reason. Your word is allowed. Yes, employees were allowed to enter the building. They didn't have a constitutional Fourth Amendment right to enter the building without being searched. The pushback here, and I think Judge Bybee talked about it at the preliminary injunction hearing, is the one rational consequence of this kind of argument is, is that everyone would have to go through the metal detector. And if everyone has to go through the metal detector, then that's an administrative search. So she doesn't have a ---- Yes, that would be an administrative search if all the employees were also subject to it. But she doesn't have a Fourth Amendment right, a constitutional right to enter that building without being searched. Is that the standard? She doesn't have a Fourth Amendment right to ---- I mean, the State can search. So the State could just pick out people and say, we don't like what you said, and so now you are subject to more thorough searching because ---- It's more than that. It was more than we don't like what you said. Well, that's her theory, though, right? That's her theory of the case. Her theory of the case is based upon an argument that they can't support with the law, that this somehow was a Sandy Hook reference that was taken to be a Sandy Hook reference and therefore a matter of public concern, and she was being retaliated against for that. There's really not any argument that she was being punished for making the statement about Sandy Hook. And that's all my time. Unless there are other questions or you want me to address any of the other I don't think it's necessary. Thank you, Your Honor. Thank you very much. Your Honor, the law of the case, I mean, you have different standards here, and the cases say when you've got the different standards. On the preliminary injunctions of use of discretion, and it's a de novo review and we're looking at the 12b-6 standard, we're looking at the pleadings to see if they pass muster, and in this case whether or not maybe they should be amended. To use the law of the case would usurp the jury function, the fact finder. It presents a Seventh Amendment problem, actually, because the jury is to be the fact finder, and to usurp that and take that away from the jury, I think, would be improper. With respect to the issue of qualified immunity on the cases, I mean, it's not applicable. When you've got an intentional violation, intentional constitutional violation that's been alleged in this case, the qualified or the discretionary immunity, which is another theory that they brought up, it's not protected. You can't intentionally violate the Constitution and be protected that way. It's a qualified privilege. There's just no rational basis in this case to go on continuing to search her for four years after everybody has been satisfied that she's not presenting any kind of threat. The four years of searches went on. There's a question of fact as to what she actually meant by this statement. Okay. And I'm sorry, I'm out of time. Out of time. Yes. Thank you. Thank you so much. We appreciate your arguments this morning and the matters submitted.
judges: Siler, Paez, Ikuta